J. THOMAS REGAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Regan v. Commissioner
Docket No. 5724-78.
United States Tax Court
T.C. Memo 1979-340; 1979 Tax Ct. Memo LEXIS 182; 38 T.C.M. (CCH) 1330; T.C.M. (RIA) 79340; August 28, 1979, Filed J. Thomas Regan, pro se. Kenneth G. Gordon, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $1,025 in petitioner's Federal income tax for 1974. After concessions by the parties the only issues remaining for decision are: (1) whether petitioner's acting profession constituted an "activity * * * not engaged in for profit" within the meaning of section 183(a), [1] and (2) whether petitioner has adequately substantiated certain expenses incurred in connection with his acting and deducted by him under section 162(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner was a legal resident of Balboa Island, California, when he filed the petition in this case. Throughout 1974 and until June 1978 petitioner was employed full time by the Drew Chemical Corporation as a chemical engineer. For several years prior to 1973 petitioner had entertained the *185 notion of entering the acting profession, but it was not until 1973 that he began to pursue the idea in earnest. During that year petitioner began taking acting lessons in the evenings from the Lee Strasberg Theatre Institute in Hollywood, California. He also retained a theatrical agent from the Barskin Agency to assist him in developing his acting career. In addition to his classes at the Strasberg Institute, which continued throughout 1974 and into 1975, petitioner began attending acting classes in 1974 at the Van Mar Academy, also in Hollywood. The Van Mar classes were conducted twice a week at night and each session lasted 3 hours. Petitioner's attendance at the Strasberg Institute varied in 1974 depending on the particular acting class involved. Those classes included: (1) a singing class, one session a week for two months; (2) a script-reading class, one session a week for two months; (3) an acting class, two sessions a week for three months; and, (4) a play production unit, which required petitioner to attend four hours a night on the weekdays and eight hours a day on the weekends for a period of about 30 days. Petitioner had to travel from Orange County to Hollywood, *186 or approximately 50 miles one way, to attend these classes. Petitioner's efforts to launch an acting career were not limited to acting classes. Under the direction of his agent he prepared a photo portfolio, mailed out resumes, and interviewed for various acting roles in movies, television, and commercials. He also paid $320 to join the Screen Actors Guild union. In connection with these efforts petitioner deducted the following expenses in 1974 [2]: Acting Lessons $ 950
Make-up and wardrobe
200
Photo portfolio
170
Resumes and mailouts
75
Screen Actors Guild, Inc.
320
Transportation expenses
1,474
TOTAL
$3,189
Petitioner's acting revenues for the year were negligible, however. He received nothing for his participation in the play "Out of the Frying Pan" which was produced by the members of the play production unit class at the Strasberg Institute. His only other acting jobs in 1974 were a part in a television pilot for the series "Moving On" and a part as an extra in a Chevrolet commercial, for which he was *187 paid a total of $50. Petitioner's acting earnings and expenses for years subsequent to 1974 are as follows: Year
Earnings
Expenses
1975 $ 850
$3,818
1976
1,856
3,605
1977
2,339
2,489
1978
5,400
2,915
1979 *
7,408
3,000
In 1978 petitioner left his job at Drew Chemical Corporation in order to devote all his attention to his acting profession. On his 1974 income tax return petitioner reported acting earnings of $50 and acting expenses of $2,869, yielding a net loss from his acting trade or business of $2,819. In the statutory notice of deficiency respondent disallowed the loss on the ground that the acting was an activity not engaged in for profit. Respondent also determined, in the alternative, that the following expenses were not properly substantiated by petitioner and hence are nondeductible: (1) transportation, $1,474; (2) makeup and *188 wardrobe, $200; and, (3) resumes and mailouts, $75. OPINION We must first decide whether petitioner's acting constituted an activity not engaged in for profit under section 183(a). It provides the general rule that if an individual engages in an activity, and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Section 183(b)(1) provides that deductions which would be allowable without regard to whether such activity is engaged in for profit shall be allowed. Section 183(b)(2) provides that deductions which would be allowable only if such activity is engaged in for profit shall be allowed "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)." Section 183(c) defines an activity not engaged in for profit as follows: (c) Activity Not Engaged in for Profit Defined.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable fr the taxable year under section 162 or under paragraph *189 (1) or (2) of section 212. [3]
*190 Section 162(a) allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The test for determining whether an individual is carrying on a trade or business under section 162 is whether he engaged in the activity with the primary purpose and intention of making a profit. Engdahl v. Commissioner,72 T.C. No. 56 (July 11, 1979); Golanty v. Commissioner,72 T.C. No. 39 (June 5, 1979); Allen v. Commissioner,72 T.C. No. 3 (April 2, 1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978), on appeal (2d Cir., March 5, 1979); and Benz v. Commissioner,63 T.C. 375, 383 (1974). The taxpayer's expectation of making a profit must be bona fide, but it is not required to be reasonable. Sec. 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,supra;Golanty v. Commissioner,supra;Dunn v. Commissioner,supra at 720. Section 1.183-2(b), Income Tax Regs., sets forth some of the relevant factors, derived principally from prior case law, which are to be considered in *191 determining whether a taxpayer had a bona fide expectation of making a profit. [4] It is clear, however, that the issue must be resolved not on the basis of any one factor but on the basis of all the surrounding facts and circumstances. Sec. 1.183-2(b), Income Tax Regs.; Golanty v. Commissioner, supra;Allen v. Commissioner,supra.Based on our review of the entire record before us, we are convinced that petitioner had the requisite intent during the year in issue. There are several reasons for our conclusion. First, *192 we are impressed with the amount of time which petitioner devoted to improving his acting skills in 1974. The acting classes in Hollywood consumed a considerable portion of his time off from his job at Drew Chemical Corporation. In addition, petitioner spent a great deal of time simply driving to and from the classes. [5] Although the classes undoubtedly afforded him a certain amount of pleasure or recreation, we think the extensive time which he put into them suggests a serious and studied effort to launch a profitable acting career. Second, we think petitioner's efforts to secure acting parts in 1974 were entirely consistent with a profit motive. The first step he took was to hire a professional agent to manage his career. He prepared a photo portfolio, mailed out approximately 250 resumes, and attended numerous screenings and interviews. He also joined the actors' guild. It is true that his efforts yielded only modest results in 1974, but losses during the initial stage of an activity do not necessarily indicate that the activity was not engaged *193 in for profit. See section 1.183-2(b)(6), Income Tax Regs.; Engdahl v. Commissioner, supra;Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Finally, we think the dramatic increase in petitioner's acting net income in subsequent years is further evidence that in 1974 petitioner carried on his acting business with a serious intent to earn a profit. He came very close to the break-even point in 1977. In 1978, the year in which he quit his job as a chemical engineer to devote all his attention to acting, he netted approximately $2,500. His estimated earnings in the first half of 1979 have already exceeded that figure, and petitioner forecasts even better results in the second half of the year. [6]
*194 In view of the foregoing, we hold that during 1974 petitioner carried on his acting trade or business with a bona fide intent to earn a profit. Having decided that petitioner's acting was not an activity "not engaged in for profit" under section 183(a), we must now determine what acting expenses he is entitled to deduct under section 162(a). [7] Respondent contends that the following expenses have not been adequately substantiated by petitioner: (1) transportation, $1,474; (2) makeup and wardrobe, $200; and (3) resumes and mailouts, $75. The transportation expense of $1,474 represents the mileage driven by petitioner in order to attend acting classes in Hollywood. [8] Petitioner testified that the average round trip for each class was approximately 100 miles, and that he made approximately 175 such trips in 1974. *195 Normally the expenses of commuting between one's residence and place of employment are nondeductible personal expenses under section 262. Commissioner v. Flowers,326 U.S. 465 (1946); Sanders v. Commissioner,439 F.2d 296 (9th Cir. 1971), affg. 52 T.C. 964 (1969). However, the cost of transportation between places of employment during the same day is deductible under section 162(a) as an ordinary and necessary business expense. Steinhort v. Commissioner,335 F.2d 496, 503-505 (5th Cir. 1964); Heuer v. Commissioner,32 T.C. 947, 953 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960).Under this rule only those trips made to Hollywood directly from petitioner's employment at Drew Chemical Corporation would be a deductible business expense. The return trip home would be a nondeductible personal expense. Petitioner has failed to substantiate the amount of mileage which represents travel directly from Drew Chemical to Hollywood. However, under the rule of Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930), we will make an approximation of the amount allowable, bearing *196 heavily upon petitioner "whose inexactitude is of his own making." We hold that petitioner is entitled to a deduction for 34 trips to Holywood, or approximately 20 percent of the total number of trips which he made during 1974. At 50 miles per trip and 15 cents per mile, petitioner is entitled to a deduction of $256. Petitioner submitted receipts totaling $221.95 to document his $200 deduction for makeup and wardrobe expense, but the documentation is inadequate. Petitioner conceded at trial that one receipt for $34.10 related to clothing purchased for his chemical engineering job and was erroneously included in the documentation. The remainder of the receipts purportedly reflect purchases of makeup and special clothing used in his acting profession. It is not at all clear, however, whether the clothing could be adapted for personal use as well as business use.If so, the clothing is a nondeductible personal expense under section 262. Petitioner testified that some of the clothing was purchased for a play set in the 1930's. Other clothing, he stated, was purchased specifically for interviews and for photo sessions. We think only the makeup and the "period" clothing purchased for *197 the play are deductible business expenses, but since we are unable to determine the amount of those expenses from the documentation submitted, an approximation under the Cohan rule is necessary. We hold petitioner may deduct $100 in makeup and wardrobe expense. Finally, we turn to the substantiation of the $75 deduction for resume expense. According to petitioner, this expense represents the cost of mailing out photos and resumes to approximately 250 studios, agents, and casting personnel. Although petitioner was unable to provide any documentation for this expense, we think the expense is legitimate and reasonable.Accordingly, we hold petitioner may deduct the entire amount ( $75) of the resume expense. To reflect concessions by the parties and our conclusions on the disputed issues, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
2. Due to a mathematical error in petitioner's 1974 income tax return the actual amount of acting expenses deducted equaled $2,869.↩
*. The earnings for 1979 represent amounts received by petitioner as of June 15. Due to the seasonal nature of the acting profession, the amount received represents only 1/3 of the total expected earnings for 1979. The expenses are an approximation of the total incurred by petitioner as of June 15.↩
3. Section 183(d) provides that if the gross income from the activity exceeds the deductions for any 2 of 5 consective taxable years ending with the taxable year at issue, then the activity shall be presumed to be engaged in for profit unless the Commissioner establishes to the contrary. This statutory presumption is not available to petitioner because he had not been involved with acting during the 4 taxable years previous to the year at issue. Section 183(e) allows a taxpayer who has only recently engaged in the activity to make an election to postpone the determination by respondent as to whether the presumption provided by section 183(d) applies. If the election is made, and if the taxpayer agrees to a waiver of the statute of limitations, the determination is delayed until the close of the fourth taxable year following the taxable year in which the taxpayer first engaged in the activity. See sec. 12.9, Income Tax Regs., adopted as temporary regulations under section 183(e) by T.D. 7308, 1974-1 C.B. 64↩, and not yet made permanent. Petitioner's failure to make any election under this subsection, however, precludes any possibility of him receiving the benefit of the section 183(d) presumption.
4. Such factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and, (9) whether elements of personal pleasure or recreation are involved.↩
5. Petitioner testified that the average round trip distance from his hime or place of employment to Hollywood was 100 miles.↩
6. At trial respondent objected strenuously to the admission of any evidence relating to petitioner's acting activities after 1974 on the ground that such evidence was irrelevant in determining whether petitioner had a bona fide profit motive during 1974. Just as a history of unexplained losses for taxable years prior to the issue year may indicate a lack of a profit motive (see, e.g., sec. 1.183-2(b)(6), Income Tax Regs.; Golanty v. Commissioner,72 T.C. No. 39 (June 5, 1979); Allen v. Commissioner,72 T.C. No.↩ 3 (April 2, 1979)), a history of profit-making years subsequent to the issue year may indicate the opposite. We think that such evidence constitutes one of the "surrounding facts and circumstances" which must be accorded the appropriate weight in determining whether the taxpayer engaged in the activity with the intent to earn a profit.
7. Respondent concedes that the petitioner has substantiated the expenses for acting lessons ( $950), photo portfolio ( $170) and Screen Actors Guild ( $320). ↩
8. The record does not reveal how this amount was computed. At trial petitioner testified that the actual distance driven by him in connection with the classes was approximately 17,500 miles. Using respondent's standard mileage allowance, this would entitled petitioner to a deduction of $2,500, assuming, of course, that the transportation costs qualified as business expenses under section 162(a). See Rev. Proc. 74-23, 1974-2 C.B. 476↩.